**Franklin E. GREAVES, Plaintiff,**

v.

**The STATE OF NEW YORK, Robert Sanford, C. Liorens, Albert Young, Philip Coombe, Jr., Acting Commissioner of The New York State Department of Correctional Services, Defendants.**

No. 95 Civ. 9725 (SAS).

United States District Court,
S.D. New York.

Nov. 13, 1996.

Solomon Abrahams, P.C., White Plains, NY, for Plaintiff.

Richard J. Cardinale, Assistant Attorney General, New York City, for Defendants.

## Opinion and Order

SCHEINDLIN, District Judge:

Plaintiff Franklin E. Greaves filed this § 1983 action on November 16, 1995 alleging that he was wrongly found guilty of disciplinary charges, removed from the Fishkill Correctional Facility's Temporary Release Program ("TRP"), and placed in solitary confinement in violation of his constitutional rights. Defendants Robert Sanford and Carlos Liorens filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 on October 21, 1996.[1] For the reasons set forth below, defendants' motion is denied.

### Factual Background

Plaintiff was released from Fishkill Correctional Facility in 1994 and placed in the Temporary Release Program ("TRP"), where he was allowed to live and work outside the prison facility five days a week. During his participation in the TRP, plaintiff remained legally in the custody of the Department of Correctional Services while living in essence the life of a parolee. The terms of plaintiff's release are attached as Exhibit A to Affidavit of Richard J. Cardinale, counsel for defendants Sanford and Liorens, dated September 20, 1996.[2]

On February 24, 1995, plaintiff reported to Fishkill for a required two-day stay. Defendants Sanford and Liorens searched plaintiff before he entered the facility, and determined that plaintiff possessed a different watch than the one for which he had previously been issued a permit. During the search, plaintiff allegedly refused a direct order and made false statements during the search. Plaintiff was subsequently issued misbehavior reports, and on February 28, 1995, was found guilty at a Tier III disciplinary hearing of a "temporary release violation" and "refusing a direct order". Plaintiff was removed from the TRP and placed in Fishkill's "Special Housing Unit" ("SHU").

## Legal Standard

A party is entitled to summary judgment when there is "no genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. See Fed.R.Civ.P. 56(c); Celotex v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of a material factual dispute rests on the moving party. See Gallo v. Prudential Residential Svcs., Ltd., 22 F.3d 1219, 1223 (2d Cir.1994). Once that burden is met, the non-moving party must present "significant probative supporting evidence" that a factual dispute exists. Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 249, 106 S.Ct. at 2510–11.

The court's role is not to try issues of fact, but rather to determine whether issues exist to be tried. See Balderman v. United States Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.1987). All ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. See Anderson, 477 U.S. at 255, 106 S.Ct. at 2513–14; Donahue, 834 F.2d at 57, 60. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir.1994).

### Discussion

To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived plaintiff of a right, privilege or immunity secured by the Constitution or law of the United States. 42 U.S.C. § 1983. See Eagleston v. Guido, 41 F.3d 865, 876 (2d Cir.1994) (quotation omit-

---

1. Plaintiff's counsel withdrew claims against New York State and Superintendent Philip Coombe, Jr. by a Stipulation and Order dated November 12, 1996. To date, plaintiff has not served defendant Young with a Summons and Complaint.

2. See generally, N.Y. Correctional Law §§ 851–861 (McKinney 1987) (governing Temporary Release Programs for State Correctional Institutions).

ted), *cert. denied,* —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995). The question here is whether plaintiff has a liberty interest in his continued participation in the Fishkill TRP. If the answer is in the affirmative, the deprivation of this interest without due process would constitute a violation of his constitutional right to procedural due process and plaintiff would have an actionable claim under § 1983. If not, then defendants are entitled to judgment as a matter of law and their motion for summary judgment must be granted.

In *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court announced a new approach to determining the viability of prisoners' due process claims. Recognizing that States may under certain circumstances create liberty interests which are protected by the Due Process Clause, the Court held that "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2299. The Court found that Conner's discipline in segregated confinement "did not work a major disruption in his environment." *Id.* at ——, 115 S.Ct. at 2301. Thus Conner had no cognizable liberty interest in remaining among the general population of the prison facility, and the administrative decision to place him in solitary confinement was not subject to the requirements of procedural due process.

It is not entirely clear that *Sandin* should apply to this case. However, the weight of recent authority leads me to conclude that it does. In *Lee et al. v. Governor of New York,* 87 F.3d 55, 58 (2d Cir.1996), the court addressed a § 1983 claim by a class of prisoners who were rendered ineligible for the TRP

by a recent amendment to New York's Correctional Law. In rejecting their claim, the court discussed the application of *Sandin* to the facts of that case:

> Since plaintiffs have never participated in any temporary release program, we do not see how new rules rendering them ineligible for such programs impose the "atypical and significant hardship" required by *Sandin.* In that case, the Court found that disciplinary confinement for 30 days "did not work a major disruption in [the plaintiff's] environment." Here, not only will plaintiffs not be subject to a "major disruption" in their environment, they will not be subject to any change in their environment. Plaintiffs will simply continue in their regular prison program until the end of their sentences, as do other inmates.

*Lee,* 87 F.3d at 58 (citation omitted) (bracketed material in original).

The reasoning of *Lee* leads to the conclusion that a participant in TRP has a liberty interest in remaining in the program. In *Lee,* the plaintiffs were not TRP participants. Thus the legislative amendment rendering them ineligible for the TRP had no effect on their day to day prison life other than to maintain the status quo. Here, by contrast, Greaves was a TRP participant at the time of the allegedly unconstitutional deprivation. The practical effect on that deprivation caused a "major disruption" and a "significant hardship." Thus, Greaves had a liberty interest in his continued participation in Fishkill's TRP.[3]

The facts of this case satisfy both the *Sandin* and the *Lee* standards. Here, the allegedly unconstitutional conduct did not involve an administrative decision to move a prisoner from one part of the prison to another but rather the full time imprisonment of a man who had been living outside the prison five days a week. TRP does, admittedly, restrict some aspects of its participants' behavior. *See* Cardinale Affidavit at

---

**3.** Two courts have reached a contrary conclusion. *See Roucchio v. Coughlin et al.,* 923 F.Supp. 360, 370 (E.D.N.Y.1996) (predating *Lee* and holding that although plaintiff spent five days a week outside the facility, "the Court is unable to conclude that the plaintiff was effectively released from institutional life into society

so as to warrant due process protection."); and *Duffy v. Selsky et al.,* No. 95 Civ. 0474, 1996 WL 407225, at *12 (S.D.N.Y.1996) (post-dating *Lee* and holding that participation in New York's TRP does not create a liberty interest under *Sandin*).

Exhibit 1 (rules and regulations governing temporary release). They are required, among other things, to remain at a specific residence, and to abstain from the abuse of alcoholic drinks; they are committed to avoiding the company of any person with a criminal record, and the participants' person, residence and property may be searched by prison officials at any time while they are outside the facility. *See* 7 N.Y.C.R.R. § 1902.1(c). All participants are subject to removal from TRP for any violation of the program's various rules. In the eyes of the law, TRP participants are still wards of the prisons which released them, even when they are not within the facility's four walls.

Nevertheless, plaintiff's removal from the TRP and his subsequent placement in solitary confinement constitutes a "major disruption" of his life and inflicts an "atypical and significant hardship". It is hard to imagine a more stark contrast in the conditions of any man's life. While participating in the TRP, plaintiff mingled with the outside world and lived a productive life in a society of free men and women. After defendants filed a misbehavior report, the same man was placed in solitary confinement. One need not have a sophisticated understanding of the environment within Fishkill's SHU to grasp the magnitude of the "disruption" and "hardship" caused by this change in plaintiff's life. Examined from any perspective, the circumstances of plaintiff's removal from the TRP and placement within solitary confinement meets both the *Sandin* and *Lee* standards and plaintiff surely had a liberty interest in his continued participation in the TRP.

### Conclusion

For the foregoing reasons, defendants' arguments that plaintiff did not have a liberty interest in remaining in the TRP must fail. Plaintiff has an actionable claim under § 1983. Defendants are not entitled to judgment as a matter of law, and their motion for summary judgment is denied.

SO ORDERED.